SUMMARY ORDER
Defendanh-Appellant Abdellatif Nouira appeals from the June 4, 2007 judgment of the United States District Court for the Eastern District of New York sentencing him to, inter alia, thirty months of imprisonment for his conviction, after a jury trial, of conspiring to commit visa fraud, in violation of 18 U.S.C. Section 371, and of using fraudulent visa documents to enter *32 the United States, in violation of 18 U.S.C. Section 1546.
Nouira operated an enterprise called the “Moroccan Service Center” in Casablanca, Morocco. The United States Consulate in Casablanca holds an annual lottery for the distribution of resident alien visas to Moroccan citizens. Winners of the lottery do not receive their visas until they have successfully completed a screening process. Once they have completed the process, the spouses of lottery winners become eligible to reside in the United States as “derivative family members.”
At trial, no fewer than seven cooperating witnesses who had been lottery winners testified concerning the following scheme: 1) after winning the lottery they received information that Nouira could help them with the screening process; 2) upon visiting the Moroccan Service Center, Nouira informed them that he had an accomplice working in the United States Consulate who was in a position to manipulate the outcome of the screening process; 3) Nouira informed them that the price of winning the assistance of the accomplice was entering into a marriage with a relative of Nouira’s; and 4) upon agreeing to this arrangement, the lottery winner would successfully pass the screening process and then enter the United States with his or her sham spouse.
Nouira’s appeal is limited to a challenge to the testimony of Abdelkebir Snafi, who at the time of trial had been working for seven years as a diplomatic security agent at the United States embassy in Rabat, Morocco. Prior to this, ■ Snafi had spent twenty-one years in the Moroccan Air Force where he served as a personnel officer whose duties included inspecting the validity of documents, including marriage certificates, contained in the files of servicemen.
The Government offered Snafi’s testimony as a means of demonstrating the fraudulent nature of the marriages entered into by the seven cooperating witnesses. It is undisputed that the registration of Moroccan marriages involves the simultaneous creation by a government official of two identical marriage certificates, one of which is given to the married couple and the other of which is filed in an official archive. Snafi pro]oosed to testify that his personal investigation had demonstrated that, although they appeared to be facially valid, none of the seven marriage certificates recording the marriages of the cooperating witnesses was genuine because corresponding copies did not exist for any of them in Moroccan official archives he visited.
Nouira objected to the admission of Sna-fi’s testimony, contending that he was nothing but a “glorified file clerk” who was unqualified to opine on the validity of the marriage certificates. After conducting a voir dire examination of Snafi, Judge Weinstein rejected Nouira’s challenge to the admission of his testimony:
THE COURT: The defendants have challenged the witness on the ground that he is not an expert.... He may testify pursuant to Rule 701 if he is not testifying as an expert. He may give his opinions and inferences since they are rationally based on the perception of the witness who physically examined the documents in their original form in a place where they are kept in Morocco.[2]
They are helpful to a clear understanding and determination of a fact in issue, namely the falsity of these documents and the degree of fraud. Even if not based on scientific, technical, or oth *33 er specialized knowledge within the scope of Rule 702, his conclusions are based on his training and perceptions of the facts necessary for him to testify.
They also come in under Rule 702 if his testimony is considered the testimony of an expert.
His testimony is based on specialized knowledge acquired through training extensively in the Moroccan Armed Forces and many years of examining these types of documents. His specialized knowledge will assist the trier of fact to understand the evidence as well as to determine the facts in issue. He is a witness qualified as an expert by his knowledge, by his skill, by his long experience and by his training.
Nouira proceeded to trial and was convicted on all counts.
“We review a district court’s evidentiary rulings under a deferential abuse of discretion standard and give district court judges wide latitude in determining whether evidence is admissible at trial.” United States v. Rigas, 490 F.3d 208, 238 (2d Cir.2007) (internal quotation marks omitted), cert. denied, — U.S.-, 128 S.Ct. 1471, 170 L.Ed.2d 296 (2008). Applying this standard, we find that Judge Wein-stein’s ruling as to the admission of Snafi’s testimony was entirely proper.
Nouira relies upon the undisputed fact that when Snafi visited the public archives to see if duplicate copies of the relevant marriage certificates were filed there, he himself did not actually go into a file room and take bound volumes of marriage certificates off of a shelf. Rather, Nouira declares, Snafi “relied upon another person to locate the particular book, out of hundreds in the registry” and that these persons were “unnamed archivists,” or even “unnamed ‘expert’ archivists.” Such reliance, Nouira contends, precludes Snafi’s testimony as a lay witness because “lay opinion testimony based on information gathered by others is not admissible before a jury.” Further, Snafi should not have been allowed to testify as an expert witness because he has “no specific training regarding the filing and recording of marriage and divorce certificates.”
We reject these arguments. It is undisputed that Snafi gave the clerks the volume and page citation as to where the disputed certificates should have been in the archives. It is also undisputed that none of the certificates were recorded in the volumes he requested. His lay opinion testimony as to this fact is obviously admissible because, as Snafi testified, “I was an eyewitness” in the archive and “I [could] see with my own eyes” that the certificates were not where they should have been. As to expert testimony, what the Government correctly describes as “the simple act” of an archivist “re-trievfing] a registry book from a restricted area” is hardly the stuff of expertise under any rational definition of the term. Nouira cites no case, and we have found none, which holds that document retrieval is an expert undertaking. Further, while it may be correct that Snafi had no training in “the filing and recording” of marriage certificates, his testimony that he received training in the Moroccan Air Force as to “how marriage documents are created” remains undisputed. The relevant issue in the crimes with which Nouira was charged is how a valid Moroccan marriage certificate is created, not the specifics of how one is properly filed.
For the reasons stated above, the judgment of conviction and sentence imposed by the district court is hereby AFFIRMED.

. Although it is of no moment, this is actually incorrect in that what Snafi “physically examined” was that the documents were not kept in the place where they were supposed to be.